United States Court of Appeals,

Fifth Circuit.

No. 91-7393.

In the Matter of Ray G. BESING and Ray G. Besing & Associates, P.C., Debtors.

Ray G. BESING and Ray G. Besing & Associates, P.C., Appellants,

v.

Lyn Noble HAWTHORNE, Appellee.

Feb. 4, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before VAN GRAAFEILAND,[*] KING, and EMILIO M. GARZA, Circuit dges.

KING, Circuit Judge:

This appeal arises from a Chapter 11 bankruptcy proceeding. Ray G. Besing and his law firm, Ray G. Besing & Associates, (jointly "the Debtors"), appeal from a bankruptcy court order dismissing an action in which they sought to invoke 11 U.S.C. § 548 to avoid a state court judgment. Concluding that the judgment, which had dismissed with prejudice the Debtors' contract and tort claims against Lyn Noble Hawthorne ("Hawthorne"), did not constitute a "transfer" for purposes of § 548, the bankruptcy court dismissed the Debtors' action. The district court affirmed. We also affirm, although we do so on different grounds.

I.

The claims at issue here have their roots in a personal and business relationship that dates back to 1981—the year Besing began handling legal matters for Hawthorne (then Lyn Noble). In December 1982, Besing presented Hawthorne with a three-carat diamond ring, and the two became engaged to be married. During the year that followed, Besing and Hawthorne entered into several business ventures, including the purchase of two Arabian fillies and a tract of land located near Austin, Texas. As time passed, however, the couple's relationship deteriorated, and, in early 1984, Besing and Hawthorne called off their engagement.

---

[*]Senior Circuit Judge of the Second Circuit, sitting by designation.

In August 1984, the Debtors sued Hawthorne in Texas state court, seeking specific performance of an alleged settlement agreement or damages for breach thereof.[1] In the alternative, they sought actual and exemplary damages for interference with and conversion of the ring, the horses, and the Austin property. Hawthorne filed a counterclaim seeking a declaratory judgment that she was the sole owner of the disputed property. She also sought recovery of damages on several business debts incurred by Besing and for fraud arising from the land transaction.

On March 2, 1987, as a result of discovery abuse, the state court entered a sanction order striking the Debtors' pleadings and dismissing with prejudice their claims for affirmative recovery.[2] Shortly thereafter, the court entered a default judgment against Besing on Hawthorne's claims for affirmative recovery and granted Hawthorne's motion for summary judgment on the property ownership issues. The parties stipulated to the amount of damages, and the state court entered a final judgment in favor of Hawthorne on January 25, 1988. The Debtors appealed.

On March 25, 1988, while the state court appeal was still pending, the Debtors filed joint petitions for relief under Chapter 11 of the Bankruptcy Code. Seeking to enforce the state court judgment, Hawthorne submitted a proof of claim in the joint bankruptcy case and initiated an adversary proceeding to determine the dischargeability of the debt.[3] Besing objected to Hawthorne's claim, and the Debtors brought a counterclaim, asserting essentially the same claims as the state court had dismissed with prejudice.

Anticipating Hawthorne's res judicata defense, the Debtors argued that their claims were not barred by the adverse state court judgment because it had not become final prior to the

---

[1]According to the Debtors' complaint, Hawthorne had orally agreed to (1) either return the diamond ring or pay Besing $32,000, (2) pay Besing $42,000 in settlement of debts and accounts arising from their business ventures, and (3) indemnify Besing for any liability arising from the purchase of the Austin property. The Debtors also alleged that Hawthorne had agreed that she and Besing would jointly own and manage the horses.

[2]This sanction is expressly authorized by Texas law. *See* TEX.R.CIV.P. 215(2)(b)(5); *see also Transamerica Natural Gas v. Powell,* 811 S.W.2d 913, 916-19 (Tex.1991); *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986); *Downwind Aviation, Inc. v. Orange County,* 760 S.W.2d 336, 339 (Tex.App.—Beaumont 1988, writ denied).

[3]*See* FED.R.BANKR.P. 4007. Hawthorne asserted that the judgment against Besing fell within one or more of the statutory exceptions to discharge set forth at 11 U.S.C. § 523.

commencement of the bankruptcy proceeding.[4]  In the alternative, the Debtors asserted that the

judgment constituted a transfer of their claims against Hawthorne for which they had received no

value.  Thus, the Debtors argued, the judgment was subject to avoidance pursuant to 11 U.S.C. §

548(a)(2)(A) and (B)(ii),[5] and they were free to relitigate their claims in the bankruptcy proceeding.

The Debtors' finality argument became moot when the Texas Court of Appeals upheld the

state trial court judgment.[6]  In light of this final determination, the bankruptcy court concluded that

the only aspect of the Debtors' counterclaim that "remained" was the § 548 action—that is, unless

the state court judgment could be avoided pursuant to § 548, it barred relitigation of the Debtors'

contract and tort claims against Hawthorne.  The Debtors apparently conceded this point before the

bankruptcy court, and they do not raise the issue on appeal.

After a short bench trial,[7] the bankruptcy court concluded that the state court judgment did

not constitute a transfer within the meaning of § 548.  The court therefore dismissed the Debtors'

counterclaim with prejudice.  The court then overruled Besing's objection, allowed Hawthorne's claim

---

[4]*See* 11 U.S.C. § 362(a)(1) (Automatic Stay) (staying the continuation of any judicial
proceeding against the debtor that was commenced before the filing of the bankruptcy petition).

[5]The statute, in pertinent part, provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any
> obligation incurred by the debtor, that was made or incurred on or within one year
> before the date of the filing of the petition, if the debtor voluntarily or involuntarily
> ... received less than a reasonably equivalent value in exchange for such transfer or
> obligation;  and ... was engaged in business or a transaction or was about to
> engage in business or a transaction, for which any property remaining with the
> debtor was an unreasonably small capital....

11 U.S.C. § 548(a)(2)(A) and (B)(ii).  Subject to limited exceptions not applicable to
these facts, the debtor in possession has all of the rights and powers of a trustee.  11
U.S.C. § 1107(a).

[6]At the request of the parties, the bankruptcy court abated the adversary proceeding to allow
the Debtors to pursue their appeal.

[7]The court heard testimony from Mr. Besing and Mr. Burch, a CPA who testified regarding
the financial status of the Debtors at the time of the state court judgment.  The parties also
stipulated to the admission of substantial portions of the state court record, including the Besing
Group's Second Amended Petition (their last live pleading), the Sanction Order, the trial court's
Final Judgment, and the Texas Court of Appeal's mandate.

against Besing's estate, and closed the adversary proceeding.[8] The Debtors appealed, and the district court affirmed. The Debtors now appeal from the decision of the district court.

## II.

Our jurisdiction to hear this appeal is conferred by 28 U.S.C. § 158(d). *See In re Louisiana World Exposition, Inc.,* 832 F.2d 1391, 1398 (5th Cir.1987); *see also In re Moody,* 849 F.2d 902, 904 (5th Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988); 28 U.S.C. § 157(b)(2) (core proceedings). We review the legal conclusions of the courts below, including their interpretations of the Bankruptcy Code, de novo. *In re Bradley,* 960 F.2d 502, 507 (5th Cir.1992); *In re Fussell,* 928 F.2d 712, 715 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1203, 117 L.Ed.2d 443 (1992); *see also In re Busenlehner,* 918 F.2d 928, 930 (11th Cir.), *cert. denied,* --- U.S. ----, 111 S.Ct. 2251, 114 L.Ed.2d 492 (1991).

## III.

Our task on appeal is to determine whether the Texas court's judgment constituted a transfer of the Debtors' claims which is subject to avoidance under § 548(a)(2)(A) and (B)(ii).[9] Relying exclusively on the Bankruptcy Code's expansive definition of "transfer," the Debtors argue that the judgment may be avoided because it "forced [them] to part with [their] claims" and "quite literally took [their] claims away ... and extinguished them without a trial." Thus, the Debtors contend, the

---

[8]Because Hawthorne's claim had been fully allowed and the confirmed plan provided for payment in full, the parties agreed that there was no reason to proceed with Hawthorne's § 523 claim. The court therefore dismissed the claim without prejudice.

[9]In the final paragraph of their brief on the transfer issue, the Debtors assert that, even if the state court judgment did not constitute a "transfer" of their claims, the damages assessed against Besing—approximately $60,000—constitute an "obligation incurred" for which Besing received no value. *See* 11 U.S.C. § 548(a). Thus, the Debtors argue, the money judgment is subject to avoidance notwithstanding this court's ultimate resolution of the transfer issue. Our review of the record reveals that the Debtors did raise this argument in their counterclaim, although they did little to urge it before the bankruptcy court. On appeal, the Debtors offer no authority to support this theory, and they make no attempt to set forth any legal argument to persuade us of its correctness. Under these circumstances, we will not address the merits of the Debtors' argument. *See* FED.R.APP.P. 28(a)(5); *Zeno v. Great Atlantic & Pacific Tea Co.,* 803 F.2d 178, 180-81 (5th Cir.1986) (issues not adequately briefed are waived and will not be considered on appeal); *see also Franceski v. Plaquemines Parish School Bd.,* 772 F.2d 197, 199 n. 1 (5th Cir.1985); *Texas Mortgage Serv. Corp. v. Guadalupe Savings & Loan Assoc.,* 761 F.2d 1068, 1073-74 (5th Cir.1985).

bankruptcy court erred in dismissing their § 548 action and refusing to retry their contract and tort claims against Hawthorne. We disagree.

A.

What constitutes a transfer for purposes of § 548 is a question of federal bankruptcy law. *Barnhill v. Johnson,* --- U.S. ----, ----, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) (citing *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 369-70, 65 S.Ct. 405, 407-08, 89 L.Ed. 305 (1945)). The Bankruptcy Code itself provides a definition:

> "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including the retention of title as a security interest and foreclosure of the debtor's equity of redemption.

11 U.S.C. 101(54).[10]

As the Debtors correctly point out, Congress intended for the Code's definition of "transfer" to be as broad as possible. *See* S.REP. No. 95-989, 95th Cong.2d Sess. 27 (1978) ("A transfer is a disposition of an interest in property. The definition ... is as broad as possible."), *reprinted in* 1978 U.S.C.C.A.N. p. 5787, 5813; H.R.REP. No. 95-595, 95th Cong. 1st Sess. 314 (1977) (same language), *reprinted in* 1978 U.S.C.C.A.N. p. 5963, 6271. "The word is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another...." *Pirie v. Chicago Title & Trust Co.,* 182 U.S. 438, 444, 21 S.Ct. 906, 908, 45 L.Ed. 1171 (1901) (construing former section 1(30) of the Bankruptcy Act from which the current Code definition was derived). Indeed, the Code's expansive definition literally encompasses "every mode ... of ... parting with ... an interest in property." 11 U.S.C. § 101(54).[11]

---

[10]Due to an error in the numbering of paragraphs added by Pub.L. 101-647 (Crime Control Act of 1990), 11 U.S.C. § 101 now has two sections (54), one defining "stockbroker" and the second defining "transfer." We shall refer to the definition of "transfer" as being codified at § 101(54). *See Barnhill,* --- U.S. at ---- n. 4, 112 S.Ct. at 1389 n. 4.

[11]Circuit courts have recently construed the definition broadly enough to include dispositions of property as diverse as a leveraged buy-out, *see Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 646 (3rd Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1476, 117 L.Ed.2d 620 (1992), and a taxpayer's election to carry forward net operating losses, *see In re Russell,* 927 F.2d 413, 417 (8th Cir.1991).

Moreover, because the Code's definition of "transfer" expressly includes involuntary dispositions of property, dispositions of property which are brought about by state judicial proceedings clearly fall within its scope. *See, e.g., In re BFP,* 974 F.2d 1144 (9th Cir.1992) (judicial foreclosure); *Butler v. Lomas & Nettleton Co.,* 862 F.2d 1015, 1019 (3rd Cir.1988) (judicial foreclosure); *In re Hulm,* 738 F.2d 323, 326 (8th Cir.) (judicial foreclosure), *cert. denied,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984); *Britt v. Damson,* 334 F.2d 896, 902 (9th Cir.1964) (divorce decree, applying former section 1(30) of the Bankruptcy Act), *cert. denied,* 379 U.S. 966, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965); *In re Thrifty Dutchman, Inc.,* 97 B.R. 101, 105-06 (Bankr.S.D.Fla.1988) (judgment requiring debtor to convey leasehold to holdover tenant); *In re Wallace,* 66 B.R. 834, 842-43 (Bankr.E.D.Mo.1986) (divorce decree); *In re Clausen,* 44 B.R. 41, 43-44 (Bankr.D.Minn.1984) (divorce decree); *In re Perdido Bay Country Club Estates, Inc.,* 23 B.R. 36, 41 (Bankr.S.D.Fla.1982) (judicial foreclosure); *see also In re Jones,* 20 B.R. 988, 994 (Bankr.E.D.Pa.1982) (judicial foreclosure, expressly applying § 548 only). Thus, to the extent the judgment had the effect of causing the Debtors to part with an interest in property, we agree that it constituted a transfer within the meaning of § 548. *See Britt,* 334 F.2d at 902 ("[I]n deciding whether the occurrence in question was a "transfer' we are not concerned with what label [state law] has placed upon occurrences of this kind. We do however, look to [state law] to determine what was actually done....").

B.

An interest in property, for purposes of § 548, includes any interest of the debtor that would have been preserved for the benefit of the bankruptcy estate but for the alleged transfer. *See In re Stevens,* 112 B.R. 175, 177 (Bankr.S.D.Tex.1989); *see also In re Hargis,* 887 F.2d 77, 79 (5th Cir.1989) (stating that the Bankruptcy Code's avoidance provisions are "exclusively geared toward protecting the rights of creditors via protection of the bankruptcy estate"), *clarified,* 895 F.2d 1025 (5th Cir.1990). Under § 541, "all legal and equitable interests of the debtor in property" become property of the bankruptcy estate. 11 U.S.C. § 541. This description is all-encompassing, and Congress intended for it to include state law claims and causes of action. *See In re Mortgageamerica*

*Corp.,* 714 F.2d 1266, 1274 (5th Cir.1983); *see also* S.Rᴇᴘ. No. 95-989, 95th Cong.2d Sess. 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. p. 5787, 5868; H.R.Rᴇᴘ. No. 95-595, 95th Cong. 1st Sess. 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. p. 5963, 6323. Texas law also recognizes claims and causes of action as interests in property. *See Renger Memorial Hosp. v. State,* 674 S.W.2d 828, 830 (Tex.App.—Austin 1984, no writ); *Garrett v. Reno Oil Co.,* 271 S.W.2d 764, 767 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). The Debtors' contract and tort claims against Hawthorne thus constituted interests in property for purposes of § 548. We therefore look to the judgment itself to determine whether it caused the Debtors to "part with" their claims.

The Debtors sued Hawthorne in Texas state court, asserting their contract and tort claims. As a result of discovery abuse by the Debtors, however, the court entered a sanction order dismissing those claims with prejudice. The sanction order was incorporated into a final judgment, and that judgment was affirmed by the Texas Court of Appeals.

Because the dismissal of the Debtors' claims was a dismissal with prejudice, the final judgment operates to bar the Debtors from reasserting their contract and tort claims in state court. *See Mossler v. Shields,* 818 S.W.2d 752, 754 (Tex.1991) (dismissal with prejudice as discovery sanction constituted a determination on the merits of a claim which barred relitigation of the claims dismissed); *Logan v. First Bank of Houston,* 736 S.W.2d 927, 931 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.) (dismissal with prejudice as a discovery sanction constituted a judgment on the merits of a claim which precluded the same issue from being raised as a defense in a subsequent suit between the parties). Moreover, under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give the Texas judgment the same preclusive effect it would have in a Texas court. *In re Brady,* 936 F.2d 212, 217 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991); *see Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986); *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *Allen v. McCurry,* 449 U.S. 90, 96, 101

S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). The judgment thus effectively extinguished the Debtors' claims against Hawthorne: Prior to the judgment, the Debtors had contract and tort claims—the right to seek a judicial remedy for Hawthorne's alleged breach of contract and interference with the disputed property; in the wake of the judgment, the Debtors had no such claims—no right to seek a judicial remedy.

In light of the Bankruptcy Code's expansive definition of "transfer," which literally encompasses "every" mode of parting with an interest in property, and the express intent of Congress that this definition be read as broadly as possible, we must agree with the Debtors' contention that the Texas court's dismissal of their claims caused them to "part with" their claims. We hold, therefore, that the bankruptcy court erred in concluding that the state court judgment had not effected a "transfer" of the Debtors' claims against Hawthorne within the meaning of § 548.

### C.

Our resolution of the transfer issue does not, however, compel reversal. We may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below. *Mangaroo v. Nelson,* 864 F.2d 1202, 1204 n. 2 (5th Cir.1989); *Watts v. Graves,* 720 F.2d 1416, 1419 (5th Cir.1983). Even the complete lack of findings and conclusions by the bankruptcy court on a material issue does not compel reversal if we can nevertheless fully understand and resolve the issue on appeal. *In re Texas Extrusion Corp.,* 836 F.2d 217, 221 (5th Cir.1988), *cert. denied,* 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988); *Cf. Pullman-Standard v. Swint,* 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982) (where findings are infirm, a remand is proper unless the record permits only one resolution of the issue). Thus, if the record otherwise supports the bankruptcy court's dismissal of the Debtors' § 548 action, we may affirm notwithstanding that court's erroneous conclusion on the transfer issue. We conclude that it does.

Although the bankruptcy court found the transfer issue dispositive, the occurrence of a transfer is merely a threshold issue under § 548(a)(2)(A). To avoid the Texas court's judgment under that provision, the Debtors also must establish, *inter alia,* that they received less than a reasonably

equivalent value for their claims. *See* 11 U.S.C. § 548(a)(2)(A); *see also In re McConnell,* 934 F.2d 662, 665 n. 1 (5th Cir.1991) (the debtor in possession has the burden to prove the elements of a fraudulent transfer under § 548). The Debtors' failure to establish this element would be fatal to their § 548 action.

Because the Bankruptcy Code does not define "reasonably equivalent value," the task of determining the scope of the term has been left to the courts. And while there is some disagreement as to whether the ultimate determination of reasonable equivalency is a question of law or of fact,[12] the inquiry is ordinarily fact-intensive. In the usual case, a court must base its determination upon subsidiary fact findings regarding the value of the property transferred and the "value"[13] received in exchange. *See, e.g., In re McConnell,* 934 F.2d at 665-67 (comparing the amount of liability incurred for breaching a real estate contract to the amount of earnest money forfeited); *In re Emerald Oil Co.,* 807 F.2d 1234, 1239 (5th Cir.1987) (comparing the value of an assigned oil and gas interest to the payments made and liabilities incurred in exchange for the interest).

Courts have developed a variety of standards for determining reasonable equivalency,

---

[12]*See In re Morris Communications NC, Inc.,* 914 F.2d 458, 467 (4th Cir.1990) (noting the confusion as to whether reasonable equivalency is a finding of fact or a conclusion of law). In *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201, 203 (5th Cir.1980), a panel of this court clearly held that the determination of "fair consideration" under § 548's predecessor was a question of law. The court noted, however, that the same result would have obtained under the clearly erroneous standard properly applied to findings of fact. Although we have not subsequently directly addressed the issue, we have, on at least two occasions, treated reasonable equivalency as if it were a fact issue. *See In re McConnell,* 934 F.2d 662, 665 (5th Cir.1991); *In re Emerald Oil Co.,* 807 F.2d 1234, 1239 n. 7 (5th Cir.1987). Of the other circuits that have directly addressed the issue, only one appears to treat reasonable equivalency as a question of law. *See In re Bundles,* 856 F.2d 815, 821 (7th Cir.1988) (holding that the statute requires the reviewing court to make an independent assessment). Three others consider it a question of fact. *See In re Ozark Restaurant Equip. Co., Inc.,* 850 F.2d 342, 344 (8th Cir.1988) (question of fact); *In re Roco Corp.,* 701 F.2d 978, 981-82 (1st Cir.1983) (the question "appears to be a factual issue"); *Klein v. Tabatchnick,* 610 F.2d 1043, 1047-48 (2d Cir.1979) ("Fairness of consideration is generally a question of fact."). We need not, however, decide this issue to resolve the case before us.

[13]For purposes of § 548, " "value' means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor...." 11 U.S.C. § 548(d)(2)(A).

frequently in the context of the attempted avoidance of state foreclosure proceedings.[14] In this case, however, the property interests at stake are the Debtors' state law contract and tort claims against Hawthorne, and the challenged transfer is a Texas state court judgment, which dismissed those claims with prejudice. Under Texas law, the dismissal constituted an adjudication on the merits of the Debtors' claims. *Mossler v. Shields,* 818 S.W.2d 752, 754 (Tex.1991); *Logan v. First Bank of Houston,* 736 S.W.2d 927, 931 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *see also In re J.A.L.,* 608 S.W.2d 819, 821 (Tex.Civ.App.—Amarillo 1980, no writ); *Zimmerman v. Texaco, Inc.,* 409 S.W.2d 607, 613-14 (Tex.Civ.App.—El Paso 1966, writ ref'd n.r.e.); *Schenker v. City of San Antonio,* 369 S.W.2d 626, 630 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.); *Murphy v.*

---

[14]In *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201 (5th Cir.1980), for example, a panel of this circuit applied a purely mathematical test, holding that a foreclosure sale which brought only 57.7 percent of the market value of a debtor's property was subject to avoidance. In so holding, the *Durrett* court also observed that it had found no case in which a transfer for less than 70 percent of market value had been approved. *Id.* at 203. This dictum spawned the so-called "*Durrett* rule," which, when mechanically applied, invalidates any transfer for less than 70 percent of fair market value. *See, e.g., In re Wheeler,* 34 B.R. 818, 821 (Bankr.N.D.Ala.1983).

Other circuits, indeed the majority of the circuits that have addressed the issue, reject *Durrett*'s purely mathematical analysis in favor of a broader "totality of the circumstances" standard. *See In re Grissom,* 955 F.2d 1440, 1445 (11th Cir.1992); *Barrett v. Commonwealth Fed. Sav. & Loan Ass'n,* 939 F.2d 20, 23-25 (3rd Cir.1991); *In re Morris Communications NC, Inc.,* 914 F.2d 458, 467 (4th Cir.1990); *In re Bundles,* 856 F.2d 815, 821 (7th Cir.1988); *In re Hulm,* 738 F.2d 323, 326 (8th Cir.), *cert. denied,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984). Under this standard, foreclosure proceedings conducted in accordance with state law are presumed to bring the reasonably equivalent value of a property unless the trustee proves that the totality of the circumstances rebut that presumption. *Grissom,* 955 F.2d at 1148; *Bundles,* 856 F.2d at 824. "Only in this manner," the Eleventh Circuit observed, "do we provide adequate deference to state ... proceedings ..., without unduly trammelling upon the policies of the bankruptcy laws." *Grissom,* 955 F.2d at 1149.

Two circuit courts have afforded even greater deference to state proceedings, holding that the price received at a noncollusive, regularly conducted foreclosure sale establishes reasonably equivalent value as a matter of law. *See In re BFP,* 974 F.2d 1144 (9th Cir.1992); *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1139 (6th Cir.1985). In adopting this rule, the Ninth Circuit acknowledged that it undermines, so some degree, the debtor's ability to recover lost equity. *BFP,* 974 F.2d at 1148. The court nevertheless concluded that "broader considerations" required it "to give a reasonable meaning to § 548 without unduly upsetting ... state law." *Id.* at 1148-49. By doing so, the court observed, "we are able to balance bankruptcy policy and comity concerns." *Id.* at 1149.

*Stigall,* 352 S.W.2d 918, 919 (Tex.Civ.App.—San Antonio 1962, writ ref'd).[15] The judgment conclusively established that the Debtors' claims against Hawthorne had no merit. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 17 cmt. b (1982) (if the original claim is invalid, "the effect of the judgment is to conclusively establish its invalidity"). We decline the Debtors' invitation to "look behind" the state court judgment and make an independent evaluation of the claims on their merits. Instead, we hold that the Texas court's disposition of the Debtors' claims constituted a transfer for reasonably equivalent value as a matter of law. Thus, because the Debtors cannot, as a matter of law, establish one of the essential statutory elements of their cause of action, the bankruptcy court properly dismissed the Debtors' § 548 claim.

We emphasize that our decision addresses only the disposition of state law claims by a state tribunal. It does not in any way limit the well-established rule that other transfers of property may be subject to avoidance under the provisions of the Bankruptcy Code. Thus, we believe that it "provide[s] adequate deference to state ... proceedings ..., without unduly trammelling upon the policies of the bankruptcy laws." *In re Grissom,* 955 F.2d 1440, 1449 (11th Cir.1992). We further note that because our decision is based upon a finding of reasonable equivalency, it does not address the issue of claims lost or forfeited by a debtor with the actual intent to defraud the creditors of the bankruptcy estate. *See* 11 U.S.C. § 548(a)(1). Finally, we note that our decision is consonant with our obligation under the Full Faith and Credit Act, 28 U.S.C. § 1738, to give the Texas judgment the same preclusive effect it would have in a Texas court. *See In re Brady,* 936 F.2d 212, 217 (5th Cir.),

---

[15]The Debtors would have us draw a distinction in this case because the dismissal was the result of a sanction order. They argue that they "did not lose [their] claims on the merits, the trial court took them away by sanction." This, we refuse to do. As noted, *supra,* Texas law draws no such distinction. *See Mossler,* 818 S.W.2d at 754 (dismissal with prejudice as discovery sanction constituted a determination on the merits of a claim); *Logan,* 736 S.W.2d at 931 (dismissal with prejudice as a discovery sanction constituted a judgment on the merits of a claim). Indeed, the Texas Supreme Court has expressly recognized that the legal basis for a sanction dismissal with prejudice is the fact that "a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Transamerica Natural Gas v. Powell,* 811 S.W.2d 913, 918 (Tex.1991). We further note that, while we are bound to give the state court judgment at least the same preclusive effect it would have under state law, *see In re Brady,* 936 F.2d 212, 217 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991), the same result would obtain under Fifth Circuit precedent. *See In re Reed,* 861 F.2d 1381, 1382-83 (5th Cir.1988); *Dillard v. Security Pacific Brokers, Inc.,* 835 F.2d 607, 608 (5th Cir.1988).

*cert. denied,* --- U.S. ----, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991).  Texas law would not afford the Debtors the opportunity to reassert their contract and tort claims against Hawthorne.  *See Mossler,* 818 S.W.2d at 754;  *Logan,* 736 S.W.2d at 931.  Section 548 should not operate to circumvent this result.  "The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]."  *In re G & R Mfg. Co.,* 91 B.R. 991, 994 (Bankr.M.D.Fla.1988).

IV.

In sum, although we are persuaded that the Bankruptcy Code's definition of "transfer" is indeed broad enough to encompass the Texas court's dismissal of the Debtors' claims, we conclude that the Debtors cannot as a matter of law establish that they received less than a reasonably equivalent value.  The bankruptcy court therefore properly dismissed the Debtors' § 548 action.  For the foregoing reasons, we AFFIRM the judgment of the district court.[16]

EMILIO M. GARZA, Circuit Judge, concurring specially:

I concur in the judgment and the majority opinion, except to the extent that it holds the state court judgment transferred the Debtors' claims within the meaning of § 548.  *See maj. op.* at 2155-56. I agree with the bankruptcy court's determination that the state court judgment did not "transfer" any interest in property for the purpose of § 548.  As both the bankruptcy court and the majority correctly point out, the effect of the state court judgment was to "discharge"[1] or "extinguish"[2] the Debtors' tort

---

[16]The Debtors raise (but, again, fail to brief) two additional arguments that warrant very little discussion.  First, they assert that because the bankruptcy court erred in concluding that the state court judgment did not constitute an avoidable transfer, that court's allowance of Hawthorne's proof of claim was clearly erroneous.  This argument is rendered moot by our resolution of the § 548 issue.  Second, they assert that it was clearly erroneous for the court to allow Hawthorne's claim against Ray G. Besing & Associates, P.C., because the state court judgment was rendered solely against Besing individually.  Our review of the record, however, reveals a claim filed by Hawthorne in Besing's individual case, an objection filed by Besing, and an order allowing the claim as filed.  We therefore find nothing in the record to support the Debtors' argument. Moreover, as the bankruptcy court correctly observed in its oral findings and conclusions, the Debtors raised only two objections to Hawthorne's claim—the lack of a final judgment and the pending adversary proceeding to avoid the judgment.  Having disposed of both of these grounds, the bankruptcy court properly allowed the claim.

[1]*See* Record Excerpts for Besing at Tab 9.

[2]*See maj. op.* at 2155.

and contract claims.

The majority emphasizes, however, the language in 11 U.S.C. 101(54), which defines "transfer" as "every mode ... of *parting with* ... an interest in property." *See supra* part III.A. The majority reasons that when the state court judgment *extinguished* the Debtors' claims, the Debtors' "part[ed] with" their claim which effected a "transfer" within the meaning of § 548. *See maj. op.* at 2155-56. I disagree. The word "transfer" suggests ownership rights passing to the possession of *another. See Pirie,* 182 U.S. at 444, 21 S.Ct. at 908 ("The word ... is intended to include every means and manner by which property can pass from the ownership and possession of another...."). Clearly, the state court judgment did not "transfer" those claims to Ms. Hawthorne; it did, however, determine that the Debtors' claims against Hawthorne had no merit. *See maj. op.* at 2157-58. Besing cannot "transfer" or "part with" a claim which a judgment has extinguished. *Cf. Matter of Wey,* 854 F.2d 196, 199 (7th Cir.1988) ("[W]hat actually occurred when Wey defaulted was an extinguishment of his equity interest in the hotel, not a transfer."). I would hold, under the facts of this case, that the Debtors' claims were extinguished, rather than transferred for the purposes of § 548.[3]

---

[3]The tautology in part III.C.—the value of Debtors' claims, found by a state judgment to be without merit is reasonably equivalent to nothing—bolsters the obvious: One cannot transfer what one does not have.