United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 23, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-51324

_____

In The Matter Of: MARGARET ANNE ERLEWINE

                                        Debtor

-----------------

RONALD E INGALLS, Trustee

                                        Appellant

        v.

MARK ERLEWINE

                                        Appellee

_____

Appeal from the United States District Court
for the Western District of Texas
_____

Before KING, Chief Judge, and HIGGINBOTHAM and BARKSDALE, Circuit
Judges.

KING, Chief Judge:

        A trustee in bankruptcy brought an adversary action under 11
U.S.C. § 548 to recover assets from the bankrupt debtor's former
husband, to whom the debtor had transferred property pursuant to
a divorce decree.  The bankruptcy court granted summary judgment
in the former husband's favor, the district court affirmed, and

the trustee now appeals to this court.  For the following reasons, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the bankruptcy of Margaret Anne Erlewine ("the Debtor").  The Debtor married Mark Erlewine ("Erlewine") in 1986, and in the course of the marriage the couple acquired certain commercial real property.  In November 1998, Erlewine filed a petition for divorce in Texas state court.  The proceeding was contested, and the court held several days of trial.  On June 4, 1999, the divorce court entered a final decree of divorce, which granted Erlewine custody of the couple's minor child as well as ownership of more than fifty percent of the couple's community assets.  The court justified the disproportionate division of property on several grounds, most prominently that: (1) the Debtor caused a significant amount of community funds to be spent on drug treatment, (2) the Debtor used community funds to purchase large and unnecessary quantities of prescription drugs, and (3) the Debtor's unreasonable position in the divorce litigation caused Erlewine to incur unusually high attorneys' fees.  The court awarded the couple's commercial real property to Erlewine, and in this action he claims that it is his business homestead and is necessary for the support of the minor child.

2

Less than a year after the divorce decree, the Debtor filed for Chapter 7 bankruptcy. The trustee of her bankruptcy estate ("the Trustee") then filed an adversary proceeding against Erlewine to recover community property transferred to Erlewine under the divorce decree. The Trustee sought to avoid the transfer under § 548 of the Bankruptcy Code, which provides, in relevant part:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> . . .
> (B)(I) received less than a reasonably equivalent value in exchange for such transfer . . . .

11 U.S.C. § 548 (2000).

The Trustee filed two motions for partial summary judgment in the bankruptcy court. The first motion sought a ruling on whether the divorce decree effected a "transfer" of an interest in property within the meaning of § 548, and the second motion asked for summary judgment on the question of whether the Debtor received, in the statute's language, "less than a reasonably equivalent value in exchange for such transfer." The bankruptcy court granted the first motion but denied the second. The Trustee then filed a motion to reconsider the denial of his second motion for partial summary judgment, and Erlewine filed his own motion for summary judgment on the issue of reasonably equivalent value.

3

After a consolidated hearing on both pending motions, the bankruptcy court denied the Trustee's motion to reconsider and granted Erlewine's motion for summary judgment on the issue of reasonably equivalent value. The bankruptcy court ruled that the Debtor received reasonably equivalent value as a matter of law, despite the fact that the divorce court had divided the couple's property on a basis explicitly described as "disproportionate." In reaching its conclusion, the bankruptcy judge relied on our decision in Besing v. Hawthorne (In re Besing), 981 F.2d 1488 (5th Cir. 1993), which he read broadly as prohibiting bankruptcy courts from "looking behind" state adjudications in § 548 avoidance actions.

The Trustee appealed the bankruptcy court's ruling on Erlewine's motion for summary judgment to the district court, which affirmed without opinion. The Trustee now appeals to this court.[1]

---

[1] There is an extra procedural wrinkle in this case. The parties treated the bankruptcy court's grant of Erlewine's motion for summary judgment as an interlocutory order, which they then appealed to the district court under an agreed motion. They apparently believed that they could not appeal the district court's affirmance of the order, so the parties then returned to the bankruptcy court to file an agreed motion for final judgment. The bankruptcy court entered judgment, the district court affirmed, and the case is now before this court. It is not clear whether these extra maneuvers were necessary, as the grant of Erlewine's motion for summary judgment may have amounted to a final determination of the parties' rights. See County Mgmt., Inc. v. Kriegel (In re County Mgmt., Inc.), 788 F.2d 311, 313 (5th Cir. 1986). In any event, there is now a final judgment before this court.

4

## II.  STANDARD OF REVIEW

We review <u>de novo</u> the bankruptcy court's grant of summary judgment.  <u>See</u> <u>Williams v. Int'l Bhd. of Elec. Workers, Local 520 (In re Williams)</u>, 298 F.3d 458, 461 (5th Cir. 2002).  Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); BANKR. R. 7056 (applying FED. R. CIV. P. 56 to adversary bankruptcy proceedings).

As to the particular issue of whether a debtor has received reasonably equivalent value under § 548, we have recognized that the question of reasonable equivalence is usually a question of fact, or is at least fact-intensive.  <u>See</u> <u>Tex. Truck Ins. Agency v. Cure (In re Dunham)</u>, 110 F.3d 286, 288-89 (5th Cir. 1997); <u>Besing</u>, 981 F.2d at 1494-95.  Certain transactions, however, can give the debtor reasonably equivalent value as a matter of law.  <u>See</u> <u>Besing</u>, 981 F.2d at 1496.  In the case before us, the bankruptcy court found that the Debtor received reasonably equivalent value as a matter of law.  Like other legal conclusions of the bankruptcy courts, this conclusion is reviewed <u>de novo</u>.  <u>See</u> <u>Bradley v. Pac. Southwest Bank, FSB (In re Bradley)</u>, 960 F.2d 502, 507 (5th Cir. 1992).

## III.  DISCUSSION

The bankruptcy court held that the state court's division of the Erlewines' marital property could not be set aside under 11

5

U.S.C. § 548(a)(1)(B) as a transfer for less than reasonably equivalent value. While this decision was based largely on an interpretation of our decision in Besing, Erlewine also offers two other grounds on which he might prevail: (1) the Trustee's action is barred by the Rooker-Feldman doctrine, and (2) res judicata and collateral estoppel preclude the Trustee from relitigating the property division.

## A.    Rooker-Feldman and Preclusion

Although we believe that the Trustee's claim fails for other reasons, we begin by briefly assessing Erlewine's Rooker-Feldman argument, since it implicates our jurisdiction. The doctrine, named after two Supreme Court cases,[2] holds that the inferior federal courts lack jurisdiction to exercise appellate review over state court decisions. See Reitnauer v. Tex. Exotic Feline Found., Inc. (In re Reitnauer), 152 F.3d 341, 343 (5th Cir. 1998) (describing the doctrine). Plainly, the Trustee's avoidance action does not seek appellate review of the state divorce proceeding in a literal sense. Nonetheless, the doctrine is potentially applicable whenever the state and federal proceedings would be "inextricably intertwined." See Davis v. Bayless, 70 F.3d 367, 375-76 (5th Cir. 1995).

While courts have often had difficulty deciding whether a state adjudication and a later federal action are so intertwined

_____

[2]    See D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

that the latter would amount to a review of the former,[3] the answer in this case is relatively clear.  Even if it could be said that the Trustee's avoidance action seeks "review" of the state divorce decree--which seems doubtful, given that the two proceedings address rather different issues--our cases have indicated that the Rooker-Feldman bar generally should not extend to state decisions that would not be given preclusive effect under doctrines of res judicata and collateral estoppel.  See Am. Airlines, Inc. v. Dep't of Transp., 202 F.3d 788, 801 & n.9 (5th Cir. 2000).  In this particular case, as explained below, the divorce decree is not entitled to preclusive effect because the Trustee was not a party to the state court divorce proceedings, nor was he in privity with any party.  For the same reason, the Rooker-Feldman doctrine is inapplicable.  See Johnson v. De Grandy, 512 U.S. 997, 1006 (1994) (refusing to apply the Rooker-Feldman doctrine against a litigant who was not a party to the prior state action).[4]

---

[3]  See, e.g., Ritter v. Ross, 992 F.2d 750, 754 (7th Cir. 1993) (noting that "[t]here is, unfortunately, no bright line that separates a federal claim that is 'inextricably intertwined' with a state court judgment from a claim that is not so intertwined") (citation omitted).

[4]  Our analysis here should not be taken to imply that the Rooker-Feldman doctrine is simply coextensive with traditional preclusion doctrine.  See generally 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469.1 (2d ed. 2002) (describing the subtle differences between the two bodies of law).  Rather, we conclude only that in this case both doctrines are inapplicable for the same reason.

The Trustee's challenge to the divorce decree is not barred by the traditional preclusion doctrines of res judicata or collateral estoppel.  The federal full faith and credit statute requires us to give state court judgments the same preclusive effect that they would enjoy in the courts of the rendering state.  See 28 U.S.C. § 1738 (2000); Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).  Under Texas law, the preclusion doctrines of res judicata and collateral estoppel apply only against a litigant who was a party to, or who is in privity with a party to, the original suit.  See Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996); Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 819 (Tex. 1984).[5]  The Trustee was not a party to the divorce action.  Nor can the Trustee be considered the Debtor's privy, for two parties are said to be in privity when they share an "identity of interests in the basic legal right that is the subject of litigation."  Amstadt, 919 S.W.2d at 653.  The interests of the Debtor in the divorce proceeding and of the Trustee in the instant case are, however, quite distinct.  As we observed in Coleman v. Alcock, another

---

[5]  In the Texas courts, the doctrine of res judicata (also known as claim preclusion) "bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in the prior suit." Bonniwell, 663 S.W.2d at 818.  Collateral estoppel (or issue preclusion), in contrast, "bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action."  Id.

8

case involving a bankruptcy trustee's attempt to avoid a transfer,

> [W]e are of the view that the Trustee is not bound, either on res judicata or judicial collateral estoppel, by the prior state court proceedings.  The Trustee is, of course, a successor of the Bankrupt for many purposes.  <u>But he is much more both in the extraordinary rights with which the Bankruptcy Act invests him, and as a general representative of the creditors</u>.

272 F.2d 618, 621-22 (5th Cir. 1959) (emphasis added).[6]  As the interests of the Debtor's creditors were not represented in the divorce action, preclusion doctrines do not bar the Trustee from vindicating the creditors' interests in this subsequent avoidance action.

## B.    Reasonably Equivalent Value

While the Trustee's claim is not barred as a matter of jurisdiction or res judicata, it nonetheless fails on the merits. In reaching this conclusion, we find significant guidance in this court's <u>Besing</u> decision.  Although <u>Besing</u> noted that its result was "consonant with" the duty to give full faith and credit to state judgments, 981 F.2d at 1496, the decision in fact rested on

---

[6]    It should be noted that the prior state judgment in <u>Coleman</u> came from the courts of Florida, not Texas.  The sentiment expressed in <u>Coleman</u> is nonetheless equally applicable in this case.  Other courts agree with <u>Coleman</u> that a bankruptcy trustee is not in privity with the debtor for purposes of an avoidance action.  <u>See</u> <u>Corzin v. Fordu (In re Fordu)</u>, 201 F.3d 693, 705-06 (6th Cir. 1999) (citing cases).  We note as well that there may be other reasons why preclusion doctrines are inapplicable in this case, but we need not address those additional factors in light of the absence of privity.

an interpretation of the phrase "reasonably equivalent value" in § 548.  That is likewise the basis of today's decision.

In Besing, the debtors sought to use § 548 to avoid a state court's adverse judgment in a contract and tort suit brought against Hawthorne, the former fiancée and business partner of one of the debtors.  Id. at 1490.  As a sanction for discovery abuse, the state court had stricken the debtors' pleadings, dismissed their claims with prejudice, and entered a default judgment against them on Hawthorne's counterclaim.  Id.  The question before us was whether the state court proceedings had effected a transfer of the debtors' interest in property for less than reasonably equivalent value.  Id. at 1491, 1494.

The Besing court first determined that the state proceedings "transferr[ed]" the debtors' interest in property, namely their causes of action against Hawthorne.  Id. at 1492-94.[7]  We then held that the debtors had received reasonably equivalent value as a matter of law.  Id. at 1495-96.  We noted that state law regarded the dismissal as an adjudication on the merits, and so

_____

[7]  While we recognize that referring to the court's judgment as effecting a "transfer" is perhaps counterintuitive, the Bankruptcy Code expansively defines "transfer" as embracing "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."  11 U.S.C. § 101(54) (2000).  As Besing pointed out, Congress intended the definition to be as broad as possible.  981 F.2d at 1492.  In this appeal, the parties agree that the divorce decree effected a transfer.

10

the state courts had effectively appraised the debtors' claims on Hawthorne's property as valueless. <u>Id.</u> at 1495-96. Therefore, the debtors' involuntary separation from their interest in those claims could not have given the debtors less than reasonably equivalent value. <u>Id.</u>

In the instant case, the Debtor entered the divorce proceedings with a claim on the couple's community property. The parties to this case agree that the divorce court's judgment effected a "transfer" of that claim for purposes of § 548, so the only question is whether the Debtor received less than reasonably equivalent value when the divorce court took the Debtor's claim on the community property and exchanged it for a concrete share of individual property. The judicial division of the couple's assets admittedly favored the Debtor's ex-husband, but this was because the state court made findings that the Debtor had previously spent a disproportionate share of community assets and had taken an unreasonable position in the divorce litigation. We cannot agree with the Trustee that the Debtor necessarily received less than reasonably equivalent value for her claims solely by virtue of the fact that the Debtor received less than half of the community property.

Citing <u>Hinsley v. Boudloche (In re Hinsley)</u>, 201 F.3d 638 (5th Cir. 2000), the Trustee insists that the inquiry into reasonable equivalence is purely an economic test, a narrower metric than those used in the decisions of divorce courts.

11

Hinsley arose from a rather different situation, however, for there a married couple agreed to a partition of their community property in contemplation of divorce. Soon after, the husband filed for bankruptcy, and the trustee of his bankruptcy estate brought an adversary proceeding against the wife. In deciding whether the spouses' agreement constituted a fraudulent transfer, we noted that "[i]ntangible, non-economic benefits, such as preservation of marriage, do not constitute reasonably equivalent value." Id. at 643 (citing Dietz v. St. Edward's Catholic Church (In re Bargfrede), 117 F.3d 1078, 1080 (8th Cir. 1997) (per curiam)). That is a sound principle, but it is meant to guard against a type of mischief not present in this case. Here it is not asserted that the Debtor volunteered to take fewer assets in exchange for non-pecuniary benefits. The property division in this case was above all an economic transaction, albeit an involuntary one. The Trustee's argument, if adopted, would apparently subject every divorce decree to scrutiny in the bankruptcy court, so long as the divorce court divided the community property unequally.

Section 548's reasonable equivalence test is naturally somewhat more difficult to apply in the context of a judicial "transfer" than it is with respect to more paradigmatic transfers, such as voluntary sales. Our understanding of how the text operates in this context draws modest support, however, from the Supreme Court's decision in BFP v. Resolution Trust Corp.,

12

511 U.S. 531 (1994), in which the Court held that the price received at a mortgage foreclosure sale conclusively satisfies the reasonable equivalence test as long as the sale was noncollusive and conducted in conformity with state law.  The Court limited its holding to mortgage foreclosures, id. at 537 n.3, but the decision's reasoning is helpful here.  In explaining the meaning of reasonable equivalence in the context of a foreclosure sale, the Court remarked that "[f]ederal statutes impinging upon important state interests 'cannot . . . be construed without regard to the implications of our dual system of government.'" Id. at 544 (ellipsis in original) (quoting Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 COLUM. L. REV. 527, 539-40 (1947)).  In interpreting § 548, the Court therefore took account of the states' interest in the security of titles to real property, an interest that would be threatened if every foreclosure could be undone in the federal bankruptcy court.  Some of the same concerns are present in this case, and they suggest that we should hesitate before we impute to Congress an intent to upset the finality of judgments in an area as central to state law as divorce decrees.

We are not sure that Besing sweeps so broadly as always to prevent a Trustee from challenging a divorce decree under § 548(a)(1)(B).[8]  But in this case the only thing that the

_____

[8]   Bankruptcy courts have in some cases set aside property settlements under § 548.  See, e.g., Citibank, N.A. v. Williams

13

Trustee can say by way of challenge to the property settlement provided by the divorce decree is that the state court divided the community assets unevenly. Whatever concerns might arise in other cases, the divorce before us--which was fully litigated, without any suggestion of collusion, sandbagging, or indeed any irregularity--should not be unwound by the federal courts merely because of its unequal division of marital property. Accordingly, we conclude that the bankruptcy court did not err in finding that the Debtor received reasonably equivalent value as a matter of law.[9]

## IV.  CONCLUSION

For the foregoing reasons, the district court's judgment affirming the bankruptcy court's judgment is AFFIRMED.

---

(In re Williams), 159 B.R. 648 (Bankr. D.R.I. 1993); Germain v. Kaczorowski (In re Kaczorowski), 87 B.R. 1 (Bankr. D. Conn. 1988).

[9] Given our disposition of the case, we need not consider Erlewine's argument that the commercial real property he was awarded in the divorce is an exempt business homestead not susceptible to an avoidance action. See Tavenner v. Smoot, 257 F.3d 401, 406 (4th Cir. 2001) (noting a split of authority on the issue).

14