**In re Michael ZERBO, Debtor.**

**Robert L. Pryor, as Chapter 7 Trustee of the Bankruptcy Estate of Michael Zerbo, Plaintiff,**

**v.**

**Debra Zerbo, Defendant.**

**Bankruptcy No. 804–81573–ast.
Adversary No. 06–08124–ast.**

United States Bankruptcy Court,
E.D. New York.

Nov. 26, 2008.

Justin Logan Rappaport, Esq., Pryor & Mandelup, Westbury, NY.

Kenneth Halpern, Esq., Sawyer Halpern & Demetri, Garden City, NY.

## MEMORANDUM OPINION GRANTING DEFENDANT SUMMARY JUDGMENT IN PART, DENYING DEFENDANT SUMMARY JUDGMENT IN PART, AND DENYING PLAINTIFF SUMMARY JUDGMENT

ALAN S. TRUST, Bankruptcy Judge.

Pending before the Court are the following:

Defendant's Motion For Summary Judgment Dismissing Complaint [dkt item 15]; and

Trustee's Affirmation in Opposition to Defendant's Motion For Summary Judgment and in Support of Trustee's Application For Summary Judgment [dkt item 17]

### Issues Before the Court and Summary of Ruling

The Plaintiff in this adversary proceeding is Robert L. Pryor, as the Chapter 7 Trustee for the estate of Michael Zerbo ("Debtor"). The Defendant is Debtor's former spouse, Debra Zerbo ("Defendant"). All of the Trustee's claims arise out of the pre-petition divorce between the Debtor and Defendant. These claims all center around the pre-petition transfer of Debtor's interest in their marital residence [1] (the "Marital Residence") to Defendant as part and parcel of their divorce proceeding and the equitable division of their former marital property (the "Transfer"). The parties agreed to the Transfer in a settlement agreement. This settlement was later incorporated into a Decree of Divorce which, *inter alia*, directed the parties to comply with the settlement.

Each party seeks summary judgment on all claims asserted by the Trustee. In his Complaint, the Trustee asserts the following claims: (I) pursuant to 11 U.S.C. §§ 544 and 548(a), and New York Debtor and Creditor Law ("DCL") §§ 273, 275, 276, 276–a, 278 and 279, for judgment against the Defendant avoiding the Transfer as a fraudulent conveyance; (ii) pursuant to 11 U.S.C. § 550(a)(1) against the Defendant, as the initial transferee, for recovery of the Marital Residence transferred by Debtor to Defendant, or in the alternative, for judgment for the value of the Marital Residence, plus interest thereon from the date of the Transfer; (iii) pursuant to 11 U.S.C. § 542(a), for judgment directing the Defendant to turnover and deliver to the Trustee, and account for, all property of Debtor's bankruptcy estate received by Defendant, (iv) pursuant to 11 U.S.C. § 105(a), for judgment for the value of the Marital Residence transferred by the Debtor to the Defendant, and for imposition of a constructive trust over the Marital Residence and all proceeds thereof; (v) pursuant to 11 U.S.C. § 547, declaring the Transfer avoided; and

---

**1.** The Marital Residence is located at 11 Ethan Allen Court, South Setauket, New York.

(vi) pursuant to 11 U.S.C. § 550(a), directing Defendant to deliver to the Trustee duly executed documents transferring Debtor's interest in the Marital Residence to the Trustee, or in the alternative, judgment for the value thereof.

For the reasons set out herein, this Court grants partial summary judgment in favor of Defendant, denies portions of Defendant's motion, and denies the entirety of the Trustee's motion.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (H), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

### Procedural History

On March 15, 2004, Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. This adversary proceeding was commenced on March 15, 2006. On July 11, 2008, Defendant moved for summary judgment. [dkt item 15] On August 8, 2008, the Trustee opposed the Defendant's motion and cross moved for summary judgment [dkt item 17]. Each side filed a Statement of Material Facts Upon Which There Is No Dispute, in accordance with Local Bankruptcy Rule 7056-1. [dkt items 15 and 17] These motions are fully briefed and were taken under submission by the Court.

### Undisputed Facts

As set forth by the parties in their respective Statements of Material Facts, the parties agree to the following facts:

1. The Debtor and the Defendant were married on July 18, 1987.

2. There were two infant children of this marriage, Nicole Zerbo born April 16, 1990, and Michael Zerbo, born February 11, 1995.

3. On January 8, 2002, Debtor commenced an action for divorce against Defendant in the Supreme Court of the State of New York, County of Suffolk (the "Divorce Action").

4. Debtor and Defendant were both represented by counsel in the Divorce Action.

5. During the Divorce Action, the state court entered a *pendente lite* order, pursuant to which the Debtor was ordered to pay temporary child support along with other expenses during the pendency of the divorce.

6. Debtor and Defendant entered into a settlement agreement in the Divorce Action dated September 19, 2003 (the "Settlement Agreement").

7. This Settlement Agreement was the result of a contentious litigation between the parties with competent legal counsel on both sides, and was the result of a considerable amount of negotiation and compromise.

8. Pursuant to the Settlement Agreement, on or about November 11, 2003, Debtor transferred all of his right, title and interest in the Marital Residence to Defendant. This transfer was the result of an exchange of consideration between Debtor and Defendant.

9. The Settlement Agreement was incorporated by reference into a Judgment of Divorce, which specifically provided as follows:

> Ordered and Adjudged that the settlement agreement dated September 19, 2003, a copy of which is on file with the Court, shall be incorporated by reference into this judgment, shall survive and not merge in this judgment, and the parties hereby are directed to comply with every legally enforceable term and provision of such settlement agreement.

The Judgment of Divorce was entered on December 10, 2003.

10. The state court issued its Findings of Fact and Conclusions of Law in the

Divorce Action.[2] The Findings of Fact and Conclusions of Law, along with the Judgment of Divorce, specifically refer to the Settlement Agreement and incorporate the specific terms of the Settlement Agreement into the Judgment of Divorce.

11. At the time the Judgment of Divorce was entered, and as of the time Debtor transferred his interest in the Marital Residence to Defendant, the Marital Residence had a value of $532,000 and was subject to a mortgage lien in favor of Wells Fargo in the amount of $140,000. Thus, prior to the division of marital property, and absent other adjustments, the Debtor was entitled to 50% of the net equity value of $392,000, being an amount equal to $196,000.

12. On March 15, 2004, Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Thus, this bankruptcy case was filed ninety-five (95) days after the Judgment of Divorce was entered, and one hundred and twenty-five (125) days after Debtor transferred his interest in the Marital Residence to Defendant.

## Legal Analysis

### The Standard for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7056(c), summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106

S.Ct. 2548, 91 L.Ed.2d 265 (quoting Fᴇᴅ. R.Cɪᴠ.P. 56(c)); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In considering cross-motions for summary judgment, the Court must evaluate the merits of each motion independently of the other. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993); *In re Rodriguez,* 50 B.R. 576 (Bankr. E.D.N.Y.1985) ("[C]ross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed.")

A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. A fact is "material" if it "might affect the Page 6 of 29 outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord,* No. 9:06–CV–401(FJS/DEP), 2008 WL 902184 *4 (N.D.N.Y. Mar.31, 2008) (citing *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. 2505).

If the movant meets his initial burden, the nonmoving party "must do more than simply show that there is some metaphysi-

**2.** Based upon the incomplete copy of the State Court's Findings and Conclusions the Defendant provided the Court, this Court cannot ascertain the entry date of the Findings and Conclusions.

cal doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (quotation omitted). "There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Cadle Co. v. Newhouse*, No. 01 Civ. 1777(DC), 2002 WL 1888716 *4 (S.D.N.Y. 2002) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); *see also Anderson*, 477 U.S. at 250, 106 S.Ct. 2505 (finding that summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

As part of the independent evaluation of cross-motions for summary judgment, the court must draw all reasonable inferences against the party whose motion is under consideration. *Coach, Inc. v. Peters*, 386 F.Supp.2d 495, 497 (S.D.N.Y.2005); see also *Considine v. Schachter(In re Schachter)*, No. 05–9404, 2007 WL 2238293 (Bankr.S.D.N.Y. Aug.1, 2007).

### Standards for Avoidance under Bankruptcy Code Sections 544(b), 547 and 548

Bankruptcy Code Section 544(b) authorizes the Trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim...." 11 U.S.C. § 544(b)(1). The "applicable law" upon which the Trustee relies is set forth in Sections 273, 275, 276, 276–a, 278 and 279 of New York Debtor and Creditor Law ("DCL") and is discussed below.

Section 547 of the Bankruptcy Code, authorizes the Trustee to avoid a transfer which prefers one creditor over similarly situated creditors, and allows the transferee to receive more than it would have received in a Chapter 7 case had the transfer not been made. 11 U.S.C. § 547.

Bankruptcy Code Section 548(a), in effect when the Debtor filed this case, authorized the Trustee to avoid a transfer made for less than reasonably equivalent value within one (1) year prior to the petition date.[3]

### Standards for Avoidance of Fraudulent Conveyances under New York Law

Under New York law, a transfer can be a fraudulent conveyance either as the result of actual intent by the transferor to hinder, delay or defraud, or as the result of the financial status of the transferor and the economic equivalence of the transaction. A constructively fraudulent transfer will occur where the transfer is made without fair consideration as defined by DCL Section 272 and (1) the transferor will be rendered insolvent (DCL § 273), or (2) the transferor intends or believes that he or she will incur debts beyond his or her ability to pay them as they mature (DCL § 275).[4] *See In re Manshul Constr. Corp.*, No. 96B44080(JHG),2000 WL 1228866 *48–49(S.D.N.Y. Aug.30, 2000)(citing *MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport Servs. Co.*, 910

---

3. Prior to the October 17, 2005, amendments to the Bankruptcy Code provided under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the applicable look-back period under § 548(a) was one (1) year. Section 548(a) was amended to provide a two (2)-year lookback. This bankruptcy case was filed prior to the effective date of the relevant BAPCPA amendments, and this Court applies the Bankruptcy Code and Rules as they existed prior to the enactment of BAPCPA.

4. N.Y. Debt. & Cred. Law § 274, which is not implicated by the Amended Complaint, also deals with constructive intent fraudulent conveyances where the transferor is engaged in business and will be left with unreasonably small capital.

F.Supp. 913, 936 (S.D.N.Y.1995)). In general, the plaintiff bears the burden of proving the lack of fair consideration. *United States v. McCombs,* 30 F.3d 310, 324 (2d Cir.1994).

DCL § 272 defines "fair consideration" as follows:

Fair consideration is given for property or obligation,

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 272 (McKinney's 2008).

■ Courts generally agree that the concept of fair consideration "can be an elusive one that defies any one precise formula," and that a determination as to whether fair consideration has been made turns on the facts of each specific case. *See McCombs,* 30 F.3d at 326.

■ DCL § 276 governs a fraudulent conveyance made with actual intent and provides:[5]

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

DCL § 276 (McKinney's 2008). The burden of proving the "actual intent" of the transferor is on the party seeking to set aside the conveyance. This intent must be established by clear and convincing evidence. "[A]ctual intent to defraud must

be proven by the party seeking to set aside the conveyance by clear and convincing evidence." *McCombs,* 30 F.3d at 328 (citing *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 126, 508 N.Y.S.2d 17, 20 (2d Dep't 1986) *and ACLI Gov't Sec. v. Rhoades,* 653 F.Supp. 1388, 1394 (S.D.N.Y. 1987)).

■ Actual intent to defraud is rarely susceptible to direct proof. Therefore, the Second Circuit Court of Appeals has enumerated certain "badges of fraud" which can establish actual intent. The nonexclusive list of badges of fraud includes:

1. lack or inadequacy of consideration;

2. family, friendship or close associate relationship between the parties;

3. retention of possession, benefit or use of the property in question by the debtor;

4. the financial condition of the transferor before and after the transfer in question;

5. the existence or cumulative effect of a pattern or series of transactions or course of conduct after the debt is incurred, the onset of financial difficulties, or pendency of threat of suits by creditors; and

6. the chronology of the events and transactions under inquiry.

*See Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582–83 (2d Cir.1983).

In his Complaint, the Trustee seeks recovery under DCL Sections 278 and 279. Section 278 sets forth the rights of creditors whose claims have matured, and provides:

1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge

---

5. The Trustee also seeks to recover attorneys' fees and expenses pursuant to DCL § 276–a. Under this Section of New York law, the Trustee may recover his fees and expenses only if he is able to prove that a fraudulent conveyance made with actual intent occurred.

of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

b. Disregard the conveyance and attach or levy execution upon the property conveyed.

2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

DCL § 278 (McKinney's 2008).

DCL Section 279 articulates the relief available to creditors whose claims have not matured, and provides:

Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may,

a. Restrain the defendant from disposing of his property.

b. Appoint a receiver to take charge of the property,

c. Set aside the conveyance or annul the obligation, or

d. Make any order which the circumstances of the case may require.

DCL § 279 (McKinney's 2008).

### The Transfer of the Marital Residence and the Exchange of Consideration

*The Trustee's Position*

The Trustee first asserts that this Court can, and should, independently review the Settlement Agreement and the Judgment of Divorce to determine if the Debtor made a fraudulent transfer, or if the Defendant received a preference. Defendant argues by analogy to *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), that a state court divorce settlement and judgment are not subject to review by a bankruptcy court under Section 548 without proof of collusion or extrinsic fraud. The Trustee rejects this position, and relies upon, *inter alia, In re Stinson*, 364 B.R. 278 (Bankr. W.D.Ky.2007) and *In re Hill*, 342 B.R. 183 (Bankr.N.J.2006).

The Trustee also alleges that the Debtor did not receive reasonably equivalent value under Bankruptcy Code § 548 for his interest in the Marital Residence, that the Debtor did not receive fair consideration under DCL §§ 273, 278 and 279, that Defendant received a preference under Bankruptcy Code § 547, and that Defendant's parents received an insider preference under § 547.

The Trustee also alleges the Transfer was made by the Debtor with actual intent to hinder, delay or defraud under DCL §§ 276, 278 and 279. However, the Trustee has not provided any evidence that the Transfer was made by the Debtor with actual intent to hinder, delay or defraud, nor has the Trustee provided any evidence that the Debtor and Defendant entered into a conspiracy or colluded to defraud creditors of Debtor.

*Defendant's Position*

As noted above, Defendant asserts that this Court cannot, or, in the alternative, should not upset the Settlement Agreement and the state court's Judgment of Divorce. In the alternative, Defendant argues she did not receive an avoidable transfer as a matter of law based upon the consideration exchanged, and that neither she nor her parents received a preference. Finally, Defendant argues this Court is precluded under the *Rooker–Feldman* doctrine from reviewing the Decree of Divorce.

### Analysis

Although this Court disagrees with Defendant's analysis of *Rooker–Feldman*, it

does agree with the Defendant's invocation of *BFP*, and, for the reasons stated herein, will grant partial summary judgment in favor of Defendant.

### Inapplicability of Rooker–Feldman

■ This Court rejects Defendant's assertion that *Rooker–Feldman* applies. This Court instead agrees with and adopts the Fifth Circuit's analysis in *Erlewine* and Judge Alley's analysis in *Bledsoe* as to why the Trustee's lawsuit is not prohibited by the *Rooker–Feldman* doctrine.

■ The Fifth Circuit in *In re Erlewine*, 349 F.3d 205, 210–11 (5th Cir.2003) stated: "[T]he divorce decree is not entitled to preclusive effect because the Trustee was not a party to the state court divorce proceedings, nor was he in privity with any party." The Court in *In re Bledsoe*, 350 B.R. 513, 516 (Bankr.D.Or.2006) stated:

> The Rooker–Feldman doctrine is a recognition of the principle that federal courts, other than the U.S. Supreme Court, lack authority to exercise appellate review over a state court's judicial decision. The doctrine applies only to individuals that were parties to the state-court proceeding; nonparties to the state-court proceeding cannot be bound. While this fraudulent transfer action does not literally seek appellate review of the dissolution judgment, the doctrine may be applicable if the federal proceeding is a "de facto" appeal of the state proceeding or involves an issue "inextricably intertwined" with a forbidden de facto appeal. agree with the court in *In re: Erlewine*, 349 F.3d 205, 210–11 (5th Cir.2003), however, that the Trustee is not precluded by Rooker–Feldman

from bringing an action in bankruptcy court alleging a fraudulent transfer.

*Bledsoe*, 350 B.R. at 516 (internal citations omitted).

Similarly here, the Trustee can sue to set aside the Divorce Decree and the underlying Settlement Agreement, as he was not a party to either.

### BFP Case

■ In *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), the Supreme Court considered the following facts. In October 1989, BFP, a partnership formed for the purpose of purchasing a home, filed for Chapter 11 bankruptcy relief. Prior to the petition date, BFP had taken title to a home subject to a first lien deed of trust in favor of Imperial Savings Association ("Imperial") to secure payment of a loan of $356,250 made to the Pedersens in connection with BFP's acquisition of the home.[6] Following defaults and a delay occasioned by an involuntary bankruptcy filing against BFP, Imperial foreclosed its lien against the home in accordance with California law. The home was purchased at the foreclosure sale by Paul Osborne for $433,000. *BFP*, 511 U.S at 533–34, 114 S.Ct. 1757.

After filing bankruptcy, BFP commenced an adversary proceeding seeking to set aside the conveyance of the home to Osborne, asserting that the foreclosure sale constituted a fraudulent transfer under § 548 of the Bankruptcy Code. BFP alleged that the home was actually worth over $725,000 at the time of the sale to Osborne for $433,000.

Acting on separate motions, the Bankruptcy Court granted summary judgment in favor of Imperial.[7] The Bankruptcy

---

6. BFP then granted a second lien deed of trust as security for a $200,000 promissory note.

7. During the course of the proceedings, the Resolution Trust Corporation ("RTC") was appointed as receiver of Imperial and appeared in the litigation on behalf of Imperial.

Court found, *inter alia,* that the foreclosure sale had been conducted in compliance with applicable California laws and was neither collusive nor fraudulent. The Ninth Circuit Bankruptcy Appellate Panel affirmed in a divided opinion. *In re BFP,* 132 B.R. 748 (9th Cir.BAP (Cal.)1991).

The Supreme Court identified the issue as follows:

> This case presents the question whether the consideration received from a noncollusive, real estate mortgage foreclosure sale conducted in conformance with applicable state law conclusively satisfies the Bankruptcy Code's requirement that transfers of property by insolvent debtors within one year prior to the filing of a bankruptcy petition be in exchange for "a reasonably equivalent value." 11 U.S.C. § 548(a)(2).

*BFP,* 511 U.S. at 533, 114 S.Ct. 1757.

In beginning its analysis, the Supreme Court noted that the constructive fraudulent transfer provisions of § 548

> permits avoidance if the trustee can establish (1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received "less than a reasonably equivalent value in exchange for such transfer." 11 U.S.C. § 548(a)(2)(A). It is the last of these four elements that presents the issue in the case before us.

*Id.* at 535, 114 S.Ct. 1757.

The Supreme Court then stated that "reasonably equivalent value" under § 548(a)(2)(A) is not a defined term under the Bankruptcy Code, but that "value" is defined. For purposes of § 548, value means "property, or satisfaction or securing of a ... debt of the debtor." The

Court went on to discuss the development of the line of cases which applied a mathematical formula to determine what was "reasonably equivalent value," as well as those cases which disagreed with this mathematical approach.

In *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201, 203–04 (5th Cir.1980), the Fifth Circuit Court of Appeals interpreted a provision of the predecessor Bankruptcy Act analogous to § 548(a)(2). *Durrett* held that a foreclosure sale which resulted in the owner receiving 57% of the property's fair market value could be set aside as a fraudulent transfer. In doing so, the Fifth Circuit indicated in dicta that any foreclosure sale which results in the owner receiving less than 70% of fair market value should be invalidated. Some subsequent decisions followed this approach, but others did not. *Compare In re Littleton,* 888 F.2d 90, 92, n. 5 (11th Cir.1989) (following *Durrett), with In re Bundles,* 856 F.2d 815, 820 (7th Cir.1988) (rejecting *Durrett* ).

The Supreme Court in *BFP* then noted, however, that *Durrett* is not applicable because § 548 is not driven by a fair market value determination, but is driven by a reasonably equivalent value determination:

> [Congress used the] entirely novel phrase "reasonably equivalent value." "[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another," and that presumption is even stronger when the omission entails the replacement of standard legal terminology with a neologism. One must suspect the language means that fair market value cannot—or at least cannot always—be the benchmark.

*BFP,* 511 U.S. at 537, 114 S.Ct. 1757 (internal citations omitted).

This appearance did not, however, impact the outcome of the case.

Thus, under *BFP*, the price received at a regularly conducted, non-collusive fore-closure sale, which is properly conducted under applicable state law, conclusively establishes reasonably equivalent value for purposes of § 548(a).

### BFP Provides an Analytic Framework for Analysis of this Case

This Court has determined that *BFP* provides an analytic framework for analysis of whether a non-collusive division of marital property, embraced by a state court judgment, should be reviewable for possible avoidance as a fraudulent transfer. In this context, this Court's analysis finds the following excerpt from *BFP* particularly relevant:

Market value cannot be the criterion of equivalence in the foreclosure-sale context. The language of § 548(a)(2)(A) ("received less than a reasonably equivalent value in exchange") requires judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth at the time of sale ... No one would pay as much to own [foreclosed] property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques. And it is no more realistic to ignore that characteristic of the property (the fact that state foreclosure law permits the mortgagee to sell it at forced sale) than it is to ignore other price-affecting characteristics (such as the fact that state zoning law permits the owner of the neighboring lot to open a gas station). Absent a clear statutory requirement to the contrary, we must assume the validity of this state-law regulatory background and take due account of its effect.

*BFP*, 511 U.S. at 538–39, 114 S.Ct. 1757 (internal citations omitted).

Notably, the Supreme Court went on to state: "The existence and force and function of established institutions of local government are always in the consciousness of lawmakers and, while their weight may vary, they may never be completely overlooked in the task of interpretation." 511 U.S. at 539–40, 114 S.Ct. 1757, *citing Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635 (1944).

Also noteworthy is that the Supreme Court in *BFP* did not differentiate between foreclosure sales conducted under court supervision (judicial foreclosures) and foreclosure sales conducted without court supervision (nonjudicial foreclosures). Rather, the Supreme Court only refers to a "properly noticed foreclosure sale." *BFP*, 511 U.S. at 533, 114 S.Ct. 1757. Under California law, the applicable law at issue in *BFP*, a foreclosure sale may be conducted either judicially (*See* CAL.CIV. CODE § 2931 (West 2008)) or non-judicially (*See* CAL.CIV.PROC.CODE § 725a (West 2008)).

In New York, as presumably in every state of the United States, divorces and the division of assets incident thereto, occur solely under the auspices of an institution of local government—namely, a state court. Further, as in a foreclosure sale, parties to a divorce proceeding are not required to market their marital residence for sale the way a home being sold by a willing seller would be sold. Divorcing parties do not always sell their marital residence on the open market through a multiple listing service or via some other recognized real estate sales device. In addition, various assets owned by a divorcing couple that are subject to being divided as marital property, such as rights in pension plans, IRAs, stock in closely held companies, life insurance policies, and similar assets, have no recognized mechanism for public sale, or even a ready market for public sale. Other assets constituting marital property, such as refrigerators, couches, golf clubs, and televisions, could

today be sold through public means not readily in use in 1984, such as on internet-based auction sites, but such sales would not necessarily generate fair market value. Divorcing parties are not necessarily willing sellers.

Further, divorcing parties divide assets for many reasons other than achieving economic equivalency. Among these are the need to adjust assets based upon ongoing custody and support of children, sentimental attachment to family heirlooms, ending the incurrence of the economic costs of the divorce proceeding itself, and, often, the necessity of bringing closure to what can be a difficult, expensive, emotional and energy consuming process.

### *Absent Extrinsic Fraud or Collusion, a Divorce Decree That Incorporates a Settlement Conclusively Establishes Reasonably Equivalent Value*

Here, this Court has determined that, absent extrinsic fraud or collusion among the divorcing parties, the division of marital assets which is agreed to by the parties, and is contemporaneously or subsequently approved by a matrimonial court, and incorporated into a divorce decree, conclusively establishes reasonably equivalent value.

██ This Court follows in part the decision in *Bledsoe*, which holds that a bankruptcy court should not interfere with the outcome of a state court divorce action, which was the result of a regularly conducted proceeding under state law, absent proof of collusion or other extrinsic fraud. 350 B.R. at 520. However, *Bledsoe* differs significantly from this case in one significant respect. In *Bledsoe*, the parties did not enter into a divorce settlement—the division of marital assets was determined by the matrimonial court without the agreement of the parties.

In *Bledsoe*, the debtor's petition for relief was filed on May 10, 2004. Prior thereto, on November 26, 2003, a judg-ment was entered dissolving debtor's marriage. The *Bledsoe* court described the divorce judgment as follows:

> The matter had been hotly contested, and Debtor was found by the Circuit Court to have unlawfully dissipated marital assets, and to have unlawfully failed to provide required discovery. The Court set out extensive findings regarding the Debtor's misconduct and concluded that a default judgment should be entered. The judgment, entered on or about November 26, 2003, awarded a substantial majority of the parties' assets to the Defendant.

*Bledsoe*, 350 B.R. at 515.

Based upon this Court's reading of *BFP*, this Court declines to differentiate between a division of assets adjudicated by the matrimonial court after trial, and a consensual settlement entered into by the parties which is subsequently approved by the matrimonial court. In either scenario, the trial court approves a division of assets that may or may not have economic equivalence but, for the reasons stated above, provide each side with reasonably equivalent value.

In light of this Court's determination that, absent collusion or extrinsic fraud, the division of marital property made a part of a divorce decree is conclusively determined to be for reasonably equivalent value under Section 548, that portion of the Debtor's motion seeking summary judgment on Count 1 of the Amended Complaint should be granted, and that portion of the Trustee's Cross–Motion on Count 1 of the Amended Complaint should be denied.

### *In the Alternative, the Transfer Was Not a Fraudulent Transfer Under Section 548 Based Upon the Consideration Exchanged*

██ In the alternative, this Court has determined that, based upon the consider-

ation exchanged as set forth in the Settlement Agreement, the Transfer was not a fraudulent transfer under Section 548 as a matter of law.

Defendant asserts the Transfer was not a fraudulent transfer, by using the following calculations:

| | |
|---|---|
| Agreed value of marital residence: | $532,000 |
| Less: | |
| Wells Fargo Mortgage balance: | ($140,000) |
| Projected real estate commission, transfer tax and closing costs if property were sold: | ($ 20,960) |
| Total | $160,960 |
| Net Equity: | $371,040 |
| **Debtor's Net Equity transferred to Defendant:** | **$185,520** |

Defendant then asserts that she was entitled to the following credits against Debtor's Net Equity:

| | |
|---|---|
| Child support arrears, pursuant to *pendente lite* order: | $ 45,532 |
| Parents loan to parties to build and maintain the marital residence (total $122,000) 1/2 due from Debtor: | $ 61,000 |
| Repairs and maintenance of $8,300 to house during divorce; one half charged to Debtor per *pendente lite* order): | $ 4,150 |
| Outstanding bills for life insurance, automobile insurance, water and miscellaneous, which was Debtor's obligation during the divorce, per *pendente lite* order but which Debtor did not pay: | $ 1,800 |
| Defendant's attorney's legal fee, which Debtor did not pay: | $ 29,500 |
| One half of marital assets improperly taken by Debtor: | $ 15,213 |
| Value of waiver of interest in Debtor's $92,000 annuity: | $ 32,200 |
| Waiver of maintenance (alimony) of $1,000 per month for 48 months: | $ 48,000 |
| **Total value to Debtor from settlement:** | **$237,395** |

Thus, even if this Court did examine the consideration exchanged under the Settlement Agreement and the Judgment of Divorce, the Defendant argues she did not receive a fraudulent transfer as a matter of law, and that, in fact, Debtor received more value than he relinquished.

The Trustee asserts that the proper calculation regarding the Transfer is as follows:

| | |
|---|---|
| Agreed value of the Marital Residence: | $532,000 |
| Less: Wells Fargo Mortgage balance | $140,000 |
| Net Equity: | $392,000 |
| The Debtor's interest in the Marital Residence: | $196,000 |

Then, according to the precise terms of the Settlement Agreement, the Trustee asserts Defendant was entitled to only the following credits:

| | |
|---|---|
| Support arrears under the *pendente lite* Order: | $ 45,532 |
| Her right to receive child support and maintenance through September 16, 2004: | $ 30,000 |
| Her interest in Debtor's annuity: | $ 32,200 |
| **Debtor's total remaining equity interest (if "loan" from Defendant's parents is properly characterized as a gift):** | **$ 88,268** OR |
| **Debtor's total remaining equity interest (if "loan" is incorrectly deemed a loan):** | **$ 27,268** |

Thus, argues the Trustee, the Transfer was without fair consideration as Debtor was still owed, at a minimum, $27,268 and, as such, the Transfer amounted to a fraudulent conveyance. The Trustee further asserts that the parents' "loan" should be properly characterized as a gift under New York law, because no documents substantiated the parents' loan, there was no interest to be charged, and there were no agreed payment terms.

 The Court will separately address each of the Trustee's claims. First, the Trustee cannot assert that the Defendant can only claim the consideration stated in the Settlement Agreement as what she surrendered in order to receive the Transfer, when the Trustee is also seeking to unwind that very agreement. If this Court considered the Trustee's claims at trial, the Court would compare all of the consideration given up by the Defendant in order to receive the Transfer, not just those set out in the precise terms of the Settlement Agreement. Defendant has established by competent summary judgment evidence that she made concessions, and therefore provided value, in excess of those detailed in the precise terms of the Settlement Agreement.

However, even if the Court were to limit Defendant to the precise terms of the Settlement Agreement as the consideration

she provided, she still did not receive a fraudulent transfer. For fraudulent transfer purposes, if the Defendant's parents made a loan for improvements to the Marital Residence for which the Debtor was liable or which encumbered the Marital Residence, the Debtor received value under Section 548(a)(2) by the extinguishment of that obligation. As noted above, "value" as defined under Section 548(d)(2), includes satisfaction or securing of an antecedent debt.

### The Defendant's Parents Made a Loan to Debtor and Defendant

The only evidence before the Court on whether or not a loan was made by Defendant's parents are the Affidavit of Defendant [dkt item 15] and her deposition testimony [dkt item 17]. In her Affidavit, Defendant stated:

22. Forgiveness of Parental Loan—During our marriage, my parents lent us $122,000 to help us build our marital residence and make improvements to it. As part of the divorce settlement, I waived any repayment of these monies by the debtor on my parents' behalf. The Judgment of Divorce states "The plaintiff's waiver of his interest in the marital residence is also the result of the separate property claim, which the defendant had as a result of the monies contributed to the purchase of the home and improvements by the defendant's parents." (Exhibit C—Judgment of Divorce, page 7, paragraph b) The Judgment of Divorce therefore treated this money as part of the property settlement to which I was entitled, but which I waived.

[dkt item 15].

In her deposition, Defendant specifically denied that "any of this money was meant to be a gift," and she testified regarding deposits her parents made to her account and the use of the funds for the home [dkt item 17, Exs. E, F & G].

In the Settlement Agreement, Debtor agreed, *inter alia,* as follows:

The Husband's waiver of his interest in the marital residence is also the result of the separate property claims which the wife had as a result of monies contributed to the purchase of the home and its improvements by the wife's parents.

[dkt item 15, Ex. A, p. 22].

Thus, based on the evidence before the Court, and drawing all proper inferences, the Trustee has failed to create a genuine issue of material fact as to whether the parents' loan was a loan or a gift. Therefore, this Court treats the funds advanced by Defendant's parents as a loan.

Even if the parents had not made an enforceable loan, however, Debtor ratified his obligation for these advances in the Settlement Agreement by acknowledging that Defendant had separate property claims for the loan. This ratification occurred more than ninety (90) days before Debtor filed for bankruptcy protection. As such, the Debtor did receive value for the release of his obligations for the loan. Had the loan not been released, the parents might have asserted an equitable lien against the Marital Residence.

Based upon the foregoing analysis, this Court holds that the Transfer was not a fraudulent transfer, and therefore, the Trustee's Claim under Section 548 must fail. Accordingly, for the reasons stated above, the Court finds that that portion of the Debtor's motion seeking summary judgment on Count 1 of the Amended Complaint should be granted, and that portion of the Trustee's Cross–Motion on Count 1 of the Amended Complaint should be denied.

### The Transfer Was Not a Constructive Intent Fraudulent Conveyance

In Count 2 of the Amended Complaint, the Trustee alleges that the Transfer can

be avoided under DCL § 273 as a constructively fraudulent conveyance. An essential element to proving a constructively fraudulent conveyance is that the transfer lacks fair consideration. As noted above, DCL § 272 defines fair consideration. This Court adopts the above analysis of the exchange of consideration as it relates to Count 1 of the Amended Complaint, and hereby incorporates by reference that analysis with respect to Count 2 of the Complaint. As a result, Debtor received fair consideration as a matter of law. Therefore, that portion of Defendant's motion seeking summary judgment as to Count 2 of the Amended Complaint should be granted, and that portion of the Trustee's Cross–Motion as to Count 2 of the Amended Complaint should be denied.

### The Transfer Was Not a Conveyance by a Person About to Incur Debts

The Trustee in Count 3 of the Amended Complaint seeks to avoid the Transfer under DCL § 275 as a conveyance made by a person about to incur debts. As with DCL § 273, an essential element to the DCL § 275 claim is that the transfer was made or incurred without fair consideration. The Court adopts its analysis and conclusion above, that Debtor received fair consideration as a matter of law. Therefore, that portion of Defendant's motion seeking summary judgment as to Count 3 of the Amended Complaint should be granted, and that portion of the Trustee's Cross–Motion as to Count 3 of the Amended Complaint should be denied.

### The Transfer Was Not a Preference

Count 5 of the Amended Complaint seeks to avoid the Transfer as a preference under Section 547. First, as to the parents of the Defendant, repayment of their loan was not an insider preference. In addition, Defendant did not receive a preference.

■■■ The Trustee bears the burden of proof on all elements of a preference claim under Section 547. Included within those elements are insolvency of the debtor at the time of the Transfer, under Section 547(b)(3), and that the transferee received more than it would have received under Chapter 7 had the transfer at issue not been made, under Section 547(b)(5). The Trustee has failed to raise a genuine issue of material fact on either of these elements.

Section 547(f) creates a presumption that the Debtor was insolvent, but that presumption applies only to the ninety (90) days preceding the petition date. Here, the Transfer occurred ninety-four (94) days preceding the petition date if measured from the Decree of Divorce, or one hundred and twenty-five (125) days prior to the petition date if measured from the date of the Transfer itself. As such, there is no presumption of insolvency.

The only evidence of solvency of the Debtor before this Court is Debtor's retention of his $92,000 annuity and Debtor's retention of certain personal property. As Debtor clearly had equity in the Marital Residence, and was relieved of all other marital liabilities, the Court cannot conclude that a genuine issue exists as to Debtor's insolvency at the time of Transfer.

Moreover, the Trustee did not provide evidence of insolvency. He simply stated in his Affirmation that "Debtor was insolvent at the time the parties entered into the Settlement Agreement." [dkt item 17, Ex. 2, ¶ 3] This unsupported conclusion is not adequate under *Anderson* and *Matsushita* to raise a genuine issue of material fact. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505, and *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Moreover, the Trustee's assertion does not address November 11, 2003, when the Transfer occurred, or December 10, 2003, when the Judgment of Divorce was entered. As such, the Trus-

tee did not raise a genuine issue of material fact on Debtor's insolvency.

Therefore, that portion of Defendant's Motion seeking summary judgment as to Count 5 of the Amended Complaint should be granted, and that portion of the Trustee's Cross–Motion as to Count 5 of the Amended Complaint should be denied.

### This Court Does Not Reach the Issue of Application of BFP to a Preference Claim

In light of this Court's disposition of the Trustee's preference claim, this Court need not and therefore does not reach the issue of the application of *BFP v. Resolution Trust Corp.* to a preference claim under Bankruptcy Code § 547.

### The "Repayment" of the Parents' Loan was Not a Preference

The Trustee argues that, even if the money provided to the Debtor and Defendant by Defendant's parents is considered a loan, the "repayment" of the $61,000 Debtor allegedly owed the parents should still be set aside as an impermissible preference to an insider pursuant to Section 547. As noted above, the repayment of the parents' loan occurred more than ninety days prior to the Petition Date. As there is no genuine issue of material fact as to Debtor's solvency during that period, Defendant's parents did not receive an insider preference.

### This Court Rejects Defendant's Affirmative Defenses to the Preference Claim

This Court rejects Defendant's affirmative defenses to the Trustee's preference claim. Defendant asserts that the repayment of the parents loan was not a preference based on the defense of "contemporaneous exchange" under Bankruptcy Code Section 547(c)(1), and as a support obligation under Section 547(c)(7). Defendant asserts as follows:

The defendant in return for obtaining the debtor's half interest in the marital residence, gave up a basket of items as outlined in her Affidavit. This is clearly the "contemporaneous exchange" referred to in Bankruptcy Code § 547(c)(1), as a defense to a preferential transfer claim. In fact, the Judgment of Divorce treats the marital residence transfer and the settlement agreement as "contemporaneous." (Exhibit C, page 7, paragraph b) 16. As a further defense to this preferential claim under Bankruptcy Code § 547, the defendant in her answer to the amended complaint refers to Bankruptcy Code § 547(c)(7) which provides that a bona fide payment of a debt to a spouse, former spouse or child of the debtor for alimony, maintenance or support for such spouse or child in connection with a separation agreement, divorce decree or other order of a court of record made in accordance with a state law or property settlement agreement is a defense to a preferential transfer claim. Clearly § 547(c)(7) was intended to protect spouses or former spouses against the preferential payment claims by trustees. [dkt items 15].

■ Defendant's affirmative defense of contemporaneous exchange under Section 547(c)(1) is rejected. The obligations to Defendant's parents that arose prior to or even during the course of the divorce proceedings were not contemporaneous exchanges with the Transfer, nor were those exchanges intended to be contemporaneous. Those obligations preceded the Transfer and were released as a result of the Transfer.

■ Moreover, the parents' loan does not qualify for the affirmative defense under Section 547(c)(7). As Section 547(c)(7) stood prior to the enactment of BAPCPA, this defense was for payments made on a

bona fide debt to the extent made for alimony, maintenance or support of the spouse or former spouse of the debtor or a child of the debtor. Here, the parents' loan does not qualify for this defense.

## *Conclusion*

Summary judgment will be granted in favor of Defendant and denied as to the Trustee on Counts 1, 2, 3, and 5 of the Trustee's Amended Complaint. Summary judgment is denied as to both parties on Counts 4, 6, 7, and 8. A trial date will be scheduled by the Court on these remaining claims. A separate judgment hereon will be entered.